*474 SUTTON, Circuit Judge.
Michael Kokoski appeals the district court’s judgment revoking his supervised release and imposing a 34-month prison sentence. We affirm.
I.
In 1994, Kokoski pleaded guilty to one count of employing a minor to distribute LSD, and in 2000 he pleaded guilty to one count of escaping from a correctional institution. For these crimes, the district court sentenced him to a total of 181 months of imprisonment and 72 months of supervised release. Kokoski was released from prison and began his term of supervised release in June 2008. On March 9, 2010, the district court revoked his supervised release and sentenced Kokoski to two months in prison after he admitted committing various state crimes and using drugs.
Less than a month after Kokoski began serving his second term of supervised release, his probation officer accused him of: (1) bringing an impostor (a friend purporting to be his attorney) to a drug-counseling session; (2) stating at a counseling session that he felt “as if [he] could get a gun and shoot [his probation officer] in the head”; (3) disrupting group counseling sessions; and (4) making “inappropriate comments” to staff at the drug-treatment facility, which, in combination with his erratic behavior, made female staff members there “very uncomfortable.” SRVR II at ¶ 5-12.
The district court held a second supervised release revocation hearing, after which it found that Kokoski had failed to engage in the drug treatment required by his terms of release. The sentencing guidelines recommended a prison sentence in the range of 8-14 months, but the district court concluded that an above-guidelines sentence was “fully supported by Mr. Kokoski’s history, his characteristics, and his behavior.” R.58 at 53. On the government’s recommendation, the court sentenced Kokoski to a term of 34 months, the statutory maximum.
II.
A.
Kokoski contends that the revocation hearing violated due process because the district court refused to allow him to cross-examine witnesses against him. Supervised release revocation proceedings, like their forerunners (parole revocation proceedings), are subject only to “minimum requirements of due process,” which are less demanding than the procedural protections that normally accompany criminal trials. Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); United States v. Lowenstein, 108 F.3d 80, 85 (6th Cir.1997) (supervised release revocation). While these requirements generally include “the right to confront and cross-examine adverse witnesses,” the hearing process should nonetheless be “flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.” Morrissey, 408 U.S. at 489, 92 S.Ct. 2593; accord Fed.R.Crim.P. 32. 1(b)(2)(C). Neither the Confrontation Clause, see United States v. Kirby, 418 F.3d 621, 627 (6th Cir.2005), nor the Federal Rules of Evidence, see Fed.R.Evid. 1101(d)(3), apply in supervised release revocation hearings, permitting the use of hearsay evidence as long as it is reliable, United States v. Waters, 158 F.3d 933, 940 (6th Cir.1998). We review reliability findings for abuse of discretion. United States v. Whitely, 356 Fed.Appx. 839, 843 (6th Cir.2009).
A number of factors go into the reliability inquiry. “Hearsay given under oath, replete with detail, or supported by cor *475 roborating evidence has been recognized as reliable. Conversely, out-of-court statements reflecting an adversarial relationship -with the accused, or containing multiple layers of hearsay, have been recognized as unreliable.” United States v. Lloyd, 566 F.3d 341, 345 (3d Cir.2009); see also United States v. Moncivais, 492 F.3d 652, 658-59 (6th Cir.2007) (finding hearsay reliable because it was “richly detailed” and “both internally and externally consistent”). The evidence presented at Kokoski’s second revocation hearing satisfied this reliability requirement.
Evaluations of Kokoski by Moster and Fischer. Kokoski objected to the admission of the evaluations by Dr. Moster and Ms. Fischer, describing them as “the real meat of the violation.” R.58 at 17. The district court reasonably concluded that both evaluations were reliable. Dr. Moster’s report is a discharge summary, a record kept in the ordinary course of business at the treatment center. See Fed. R.Evid. 803(6). Ms. Fischer’s report consists of notes taken while treating a patient, which we have recognized may be admitted as a business record. See Flood v. Phillips, 90 Fed.Appx. 108, 117 (6th Cir.2004). There is no reason to doubt— and thus far no one has offered any reason to doubt — that the two reports here satisfy the requirements of business records. Because both evaluations fall within this “firmly rooted hearsay exception,” their reliability “can be inferred without more.” Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36, 67, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The evaluations, moreover, are detailed accounts that corroborate each other and indeed have been corroborated by Kokoski himself. See Crawford v. Jackson, 323 F.3d 123, 130 (D.C.Cir.2003) (hearsay is reliable and admissible at a revocation hearing when corroborated by the defendant’s own statements). Kokoski’s counsel acknowledged the truth of two of the allegations — that his client brought an impostor to counseling and had mused about shooting his probation officer. And the allegation that Kokoski was not meaningfully participating in drug treatment is confirmed by Kokoski’s own admission that he does not “view [himself] as having a drug problem” and is “not interested in sobriety.” R.37 at 2. Because Kokoski “does not specifically dispute the reliability of [these factual allegations] on appeal,” we cannot say— indeed it would be exceedingly hard to say — that the district court abused its discretion in considering them. United States v. Roark, 403 Fed.Appx. 1, 5 n. 6 (6th Cir.2010).
There is some question whether a district court’s reliability finding must satisfy a procedural requirement as well, namely that the court expressly balance on the record the government’s interest in relying upon the hearsay — the Moster and Fischer reports — against Kokoski’s interest in confrontation. Compare United States v. Kelley, 446 F.3d 688, 692 (7th Cir.2006) (no explicit balancing required if hearsay is sufficiently reliable), with Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir.1999) (requiring “an explicit, specific finding of good cause” to permit the use of hearsay at a parole revocation hearing). Whether such a requirement exists and, if so, when it applies need not detain us. Even if trial courts must spell out on the record why the balancing inquiry came out the way it did, any such error was harmless here.
In the context of a supervised release revocation hearing, the erroneous admission of hearsay evidence is harmless unless it “affeet[ed]” the defendant’s “substantial rights,” United States v. Whitely, 356 Fed.Appx. 839, 843 (6th Cir.2009), *476 which is to say that it altered “the outcome of the district court proceedings,” United States v. Jackson, 422 Fed.Appx. 408, 411 (6th Cir.2011). The key factual allegations contained in the hearsay evidence—that Kokoski threatened his probation officer, brought an impostor to counseling sessions and was not interested in freeing himself from his drug problem—were not disputed at Kokoski’s revocation hearing, and they are not disputed on appeal. See Whitely, 356 Fed.Appx. at 844. All of this by definition establishes harmlessness—that admission of the two reports did not alter the outcome of the proceedings. See United States v. Stanfield, 360 F.3d 1346, 1360 (D.C.Cir.2004) (Roberts, J.).
Probation Officer Frommeyer’s Report and Statements. Nor did the district court err in relying upon the report prepared, and the in-court statements made, by Robert Frommeyer, the supervising probation officer handling Kokoski’s case. Because Kokoski did not object to the court’s consideration of Frommeyer’s report and statements, we review the district court’s decision to consider them for plain error. Frommeyer appeared at the revocation hearing, giving Kokoski the opportunity to question him about the contents of his report. Kokoski chose not to do so, presumably because he did not contest the accuracy of the relevant portions of Frommeyer’s report and statements. See supra at 4. On this record, the district court reasonably “could have concluded that [Frommeyer’s report and statements] were fairly reliable, insofar as they were corroborated by ... undisputed fact[s],” defeating any possibility of plain error. Stanfield, 360 F.3d at 1360.
Notice. Kokoski argues that the pleadings filed by the government failed to give him notice of the charges against him. He complains that the government charged him with failing to participate in drug treatment but then “unleashed” a battery of unrelated charges against him at the revocation hearing. Kokoski Br. at 16-17. Not true. The government presented the same factual allegations at the hearing that it included in its initial petition for revocation: bringing a friend with him to treatment, announcing his intention to kill his probation officer, making inappropriate comments to staff members and not seriously engaging in treatment. And the term of the agreement he violated— failing to participate in a drug-treatment program—is the same one the government raised in its petition. Kokoski had notice of the charges against him.
B.
Kokoski argues that insufficient evidence supported the supervised-release violation. We disagree. The court acknowledged that Kokoski was physically present at treatment sessions but found that he did not take treatment seriously, that he engaged in disruptive and threatening behavior at treatment sessions, and that he had no sincere desire to end his drug addiction. The record amply supports these findings, permitting the court to conclude that Kokoski did not meaningfully participate in the treatment program.
C.
Kokoski argues that the psychotherapist—patient privilege protected statements he made to a counselor while receiving drug treatment and should not have been considered. The issue here is not whether the privilege—protecting “confidential communications made to licensed psychiatrists and psychologists”—applies. Jaffee v. Redmond, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). It is whether Kokoski waived the privilege. A patient may waive the psychotherapist— *477 patient privilege by knowingly and voluntarily relinquishing it, such as by disclosing the substance of therapy sessions to unrelated third parties. United States v. Hayes, 227 F.3d 578, 586 (6th Cir.2000).
Kokoski waived the privilege, first, by signing a waiver form authorizing the release of confidential information to the probation office. The form notified Kokoski that the information disclosed could include the “type, frequency, and effectiveness of therapy (including psychotherapy notes).” R.48 Ex. A. Kokoski argues that the waiver should be set aside because he had no choice but to sign it as a condition of his supervised release, creating a “classic Catch 22 scenario” in which Kokoski had to attend counseling but could not share his personal thoughts without running the risk that they would be used against him at a revocation hearing. Kokoski Br. at 25. Whatever the merits of that claim as a matter of policy, the government was well within its rights to demand that Kokoski surrender certain rights and privileges as a condition of supervised release, including the psychotherapist—patient privilege. Cf. Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Kokoski at any rate waived the privilege in another way—by disclosing the substance of his therapy sessions. He included a copy of Dr. Moster’s report in his motion for sanctions.
D.
Kokoski claims that his sentence was proeedurally unreasonable because the court failed to consider the guidelines or justify its imposition of an above-guidelines sentence. Since Kokoski did not object to the sentencing procedure below, despite being given an opportunity to do so, we review this claim for plain error. United States v. Vonner, 516 F.3d 382, 386 (6th Cir.2008) (en banc). The district court committed no procedural error, let alone a plain one. It considered the § 3553 sentencing factors and guidelines range, properly treated the guidelines as advisory and considered both parties’ arguments before clearly explaining its rationale for the sentence imposed.
E.
Kokoski separately claims that his 34-month prison sentence was substantively unreasonable, a claim we review “under a deferential abuse-of-discretion standard.” Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). When a district court imposes a sentence outside the guidelines range, it “must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance,” since “a major departure should be supported by a more significant justification than a minor one.” Id. at 50, 128 S.Ct. 586.
No doubt, this sentence was well above the guidelines range—20 months over the 14-month high end of the range. But that does not make it excessive or an abuse of discretion. The court justified the variance based on Kokoski’s extensive criminal history (including multiple supervised release violations in a three-month span), his lack of interest in receiving treatment and his statements about shooting his probation officer—all legitimate grounds for this variance. See United States v. Woodard, 638 F.3d 506, 510 (6th Cir.2011) (extensive criminal history); United States v. Branch, 405 Fed.Appx. 967, 969-70 (6th Cir.2010) (repeated violations of terms of supervised release); United States v. Kontrol, 554 F.3d 1089, 1092-93 (6th Cir.2009) (threatening remarks to probation officer). No reversible error occurred.
*478 III.
For these reasons, we affirm.